**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF RHODE ISLAND**

IN RE:

WANDA L. GRANT                                    BK No.:  1:23-bk-10061
                                                 Chapter 13

            Debtors

## MOTION FOR RELIEF FROM CO-DEBTOR STAY

TO THE HONORABLE DIANE FINKLE:

WILMINGTON SAVINGS FUND SOCIETY, FSB, D/B/A CHRISTIANA TRUST, NOT

INDIVIDUALLY BUT AS TRUSTEE FOR PRETIUM MORTGAGE TRUST ACQUISITION

together with its successors and assigns ("Movant"), your moving party in the within Motion,

respectfully represents as follows:

     1.     Movant is an entity with an address of 3501 Olympus Boulevard, 5th

Floor, Suite 500, Coppell, Texas 75019.

     2.     WANDA L. GRANT (the "Debtor") is an individual with a mailing

address of 111 Donelson St, Providence, RI 02908.

     3.     The non-filing debtor, Madeline A. Grant (together with WANDA L.

GRANT, the "Debtors") is an individual who resides at 107-111 Donelson St,

Providence, RI 02908

     4.     Wanda Grant is an obligor pursuant to a promissory note (the "Note") dated

January 6, 2006, in the original principal amount of $163,000.00. The debtors executed a

Loan Modification Agreement with respect to the Note on or about January 30, 2019,

which modified the principal balance to be $284,262.11.  A copy of the Note is annexed as

Exhibit "A" and the Loan Modification is annexed as Exhibit "D".

5.      To secure the Note the Debtor and Madeline A. Grant executed in favor

of, and delivered a mortgage to Bank of America, N.A. (the "Mortgage", together with

the Note and any other loan documents executed in connection therewith, the "Loan

Documents") dated January 6, 2006, securing the Note and encumbering the property

located at 111 Donelson St, Providence, RI 02908 (the "Property").  A copy of the

Mortgage is annexed as Exhibit "B".

6.      There is no other collateral to secure the Note.

7.      Movant is the current holder of the Loan Documents by virtue of

the assignments of mortgage, annexed as Exhibit "C".

8.      On January 30, 2023, the Debtor filed a petition under Chapter 13 United

States Bankruptcy Code in the United States Bankruptcy Court for the District of

Rhode Island.

9.      As of August 7, 2023, the total amount due and owing pursuant to the

Loan Documents was $345,836.10 in principal, accrued interest, late charges,

miscellaneous fees, and attorneys' fee and costs, plus any additional interest, attorneys'

fees, costs or expenses.

10.     There is a pre-petition arrearage in the amount of $60,309.96 due and

owing under the Loan Documents per the Filed Proof of Claim #3-1.

11.     As of August 7, 2023, the last payment received from the Debtor was on

April 11, 2023, in the amount of $1,430.00.

12.     As of August 7, 2023, there is a post-petition payment arrearage owing

under the Loan Documents in the amount of $8,576.99.  This amount is exclusive of

attorneys' fees, costs, and expenses in connection with this Motion.

13.     The regular monthly payment due at this time is approximately $1,429.57.

14.     Based upon Schedule D and the amount presently due under the Loan Documents, the total amount of encumbrances on the Property is approximately $345,836.10.

15.     The Debtors' Schedule A/B lists a fair market value for the Property of $249,800.00.

16.     Movant seeks relief from the Co-Debtor Stay under 11 U.S.C. Section 1301.

17.     Movant seeks relief from the automatic stay pursuant to 11 U.S.C. §§ 362(d)(1) and § 1301 Co-Debtor Stay for cause on the basis that the Debtors are in default of the Note and Mortgage, resulting in an arrearage under the Loan Documents.

18.     Movant also seeks relief from the automatic stay pursuant to 11 U.S.C. 362(d)(2) on the basis that there is no equity in the Property, and it is not necessary to an effective reorganization.

WHEREFORE, Movant requests that the Court:

(1)   Grant relief from the section 1301 Co-Debtor stay for the purpose of exercising its various non-bankruptcy rights and remedies including, without limitation:

    a.   taking possession of the Property, obtaining a deed-in-lieu of foreclosure and/or foreclosing the Mortgage; and

    b.   taking such action as may be necessary to evict the Debtor or any occupant from the Property.

(2)  The Trustee cease making any further distributions to the Movant.

(3)  Order such other and further relief as may be just and proper.

WILMINGTON SAVINGS FUND SOCIETY,
FSB, D/B/A CHRISTIANA TRUST, NOT
INDIVIDUALLY BUT AS TRUSTEE FOR
PRETIUM MORTGAGE TRUST ACQUISITION

By Its Attorney,

*/s/Jeffrey J. Hardiman*
Jeffrey J. Hardiman, RI Bar No. 6299
Attorney for Creditor
BROCK & SCOTT, PLLC
3825 Forrestgate Drive
Winston Salem, NC 27103
Telephone: (844) 856-6646
Facsimile: (704) 369-0760
NEWENGLANDBKR@brockandscott.com

## **CERTIFICATION**

Within twenty (20) days after service, if served electronically, as evidenced by the certification, and an additional three (3) days pursuant to Fed. R. Bank. P. 9006(f) if served by mail or other excepted means specified, any party against whom such paper has been served, or any other party who objects to the relief sought, shall serve and file an objection or other appropriate response to said paper with the Bankruptcy Court Clerk's Office, 380 Westminster Street, 6th Floor, Providence, RI 02903, (401) 626-3100. If no objection or other response is timely filed, the paper will be deemed unopposed and will be granted unless: (1) the requested relief is forbidden by law; (2) the requested relief is against public policy; or (3) in the opinion of the Court, the interest of justice requires otherwise.

<u>CERTIFICATE OF SERVICE</u>

The undersigned does hereby certify that the Motion for Relief from Co-Debtor Stay and the proposed Order were served upon the following parties by causing true and correct copies of the same to be sent via electronic notice or via first class mail postage pre-paid, as indicated, on August 14, 2023:

**Via Electronic Notice:**

Gary L Donahue
U.S. Trustee
Office of the U.S. Trustee
One Exchange Terrace Suite 431
Providence, RI 02903
ustpregion01.pr.ecf@usdoj.gov

**Charles A. Pisaturo, Jr.**
Office of the Chapter 13 Trustee
400 Westminster Street, Suite 54
Providence, RI 02903
mail@13ritrustee.com

Michael Zabelin, Esq.
Counsel to the Debtor(s)
Rhode Island Legal Services
56 Pine Street
4th Floor
Providence, RI 02903
mzabelin@rils.org

**Via First Class Mail:**

WANDA L. GRANT
111 DONELSON STREET
PROVIDENCE, RI 02908

MADELINE A. GRANT
111 DONELSON STREET
PROVIDENCE, RI 02908

*/s/Jeffrey J. Hardiman*
Jeffrey J. Hardiman, RI Bar No. 6299
Attorney for Creditor
BROCK & SCOTT, PLLC
3825 Forrestgate Drive
Winston Salem, NC 27103
Telephone: (844) 856-6646
Facsimile: (704) 369-0760
NEWENGLANDBKR@brockandscott.com

UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF RHODE ISLAND
(PROVIDENCE)

R.I. Local Bankr. Form R

- - - - - - - - - - - - - - - - - - - - - - - - - - - - *

In re:  WANDA L. GRANT

BK No.  1:23-bk-10061
Chapter 13

Debtor

- - - - - - - - - - - - - - - - - - - - - - - - - - - - *

## RELIEF FROM STAY WORKSHEET – REAL ESTATE

I, **Isiah Berry    Bankruptcy Specialist** _____(Name and Title) of WILMINGTON SAVINGS FUND SOCIETY, FSB, D/B/A CHRISTIANA TRUST, NOT INDIVIDUALLY BUT AS TRUSTEE FOR PRETIUM MORTGAGE TRUST ACQUISITION (hereinafter, "Movant") hereby verify the following:

### BACKGROUND INFORMATION

1. Real property address which is the subject of this motion:
   111 Donelson St, Providence, Rhode Island 02908,

2. Lender Name: WILMINGTON SAVINGS FUND SOCIETY, FSB, D/B/A CHRISTIANA TRUST, NOT INDIVIDUALLY BUT AS TRUSTEE FOR PRETIUM MORTGAGE TRUST ACQUISITION

3. Date of Mortgage: January 6, 2006.

4. Post-Petition payment address: Attn: BK Dept., 3501 Olympus Blvd, 5th Floor, Suite 500, Dallas, TX 75019.

5. The manner in which the movant perfected its interest in the property:

   See Exhibits attached.

6. All other material liens and encumbrances on the property: $0.00

   See Debtor's Schedule D.

## DEBT/VALUE REPRESENTATIONS

7. Total pre-petition and post-petition indebtedness of Debtor(s) to Movant at the time of
   filing the motion: $345,836.10 as of August 7, 2023.
   (Note: this amount may not to be relied on as a "payoff" quotation.)

8. Movant's estimated market value of the real property: $249,800.00.

9. Source of estimated valuation: Schedule A/B.

## STATUS OF DEBT AS OF THE PETITION DATE PER THE FILED PROOF OF CLAIM #3-1

10. Total pre-petition indebtedness of Debtor(s) to Movant as of petition filing date:
    January 30, 2023.

     A. Amount of principal: $194,659.75
     B. Amount of interest: $26,592.95
     C. Amount of escrow (taxes and insurance): $14,373.78
     D. Amount of forced placed insurance expended by Movant: N/A
     E. Amount of fees billed to Debtor(s) pre-petition: $12,690.29
     F. Amount of pre-petition late fees, if any, billed to Debtor(s): N/A
     G. Amount of deferred balance: $87,411.54

11. Contractual interest rate: 11.99% (If interest rate is (or was) adjustable, please list the
    rate(s) and dates(s) the rate(s) was/were in effect.

             11.99%   from   January 30, 2019   to   Current

12. Please explain any additional pre-petition fees, charges or amounts charged to
    Debtor's/Debtor's account and not listed above: N/A

## AMOUNT OF ALLEGED POST-PETITION DEFAULT AS OF
August 7, 2023

13. Date last payment was received: April 11, 2023

14. Alleged total number of payments post-petition from filing of petition through payment due on March 1, 2023, to August 1, 2023.

15. Please list all post-petition payments alleged to be in default:

### SCHEDULE OF PAYMENTS THAT WERE DUE:

| Date Payment Due | Payment Amount Due Post Petition |
|---|---|
| March 1, 2023 | $1,429.57 |
| April 1, 2023 | $1,429.57 |
| May 1, 2023 | $1,429.57 |
| June 1, 2023 | $1,429.57 |
| July 1, 2023 | $1,429.57 |
| August 1, 2023 | $1,429.57 |
| Less suspense | ($0.43) |
| Totals: | $8,576.99 |

### SCHEDULE OF PAYMENTS THAT WERE RECEIVED

| Date | Amount Received | Amount Applied to Principal and Interest | Amount Applied to Escrow | Late Fee Charged (if any) | Amount applied to legal fees or costs (specify) |
|---|---|---|---|---|---|
| 04/11/2023 | $1,430.00 | $900.85 | $465.21 | $0.00 | $0.00 |
| Totals: | $1,430.00 | | | | |

16. Amount of Movant's Attorney's fees billed to Debtor for the preparation, filing and prosecution of this motion: $1,050.00.

17. Amount of Movant's filing fee for this motion: $188.00.

18. Other Attorney's fees billed to Debtor post-petition: $825.00.

19. Amount of Movant's post-petition inspection fees: $0.00.

20. Amount of Movant's post-petition appraisal/broker's price opinion: $0.00.

21. Amount of forced placed insurance or insurance provided by the Movant post-petition: $0.00.

22. Sum held in suspense by Movant in connection with this contract, if applicable: $0.43.

23. Amount of other post-petition advances or charges: i.e., taxes, insurance incurred by Debtor, etc.: $0.00.

24. Amount and date of post-petition payments offered by the debtor and refused by the Movant: N/A

## REQUIRED ATTACHMENTS TO MOTION

Please attach the following documents to this motion and indicate the exhibit number associated with the documents.

(1)   Copies of documents that indicate Movant's interest in the subject property. For purposes of example only, a complete and legible copy of the promissory note or other debt instrument together with a complete and legible copy of the mortgage and any assignments in the chain from the original mortgagee to the current moving party. (Exhibit _____.)

Exhibit "A", Note; Exhibit "B", Mortgage; Exhibit "C", Assignment, Exhibit "D" Loan Modification

(2)   Copies of documents establishing proof of standing to bring this Motion. (Exhibit _____.)
              See number (1) above.

(3)   Copies of documents establishing that Movant's interest in the real property was perfected. For the purposes of example only, a complete and legible copy of the Financing Statement (UCC-1) filed with either the Clerk's Office or the Register of the county the property is located in. (Exhibit _____.)

              See number (1) above.

## CERTIFICATION AND DECLARATION FOR BUSINESS RECORDS

I certify that the information provided in this worksheet and/or exhibits attached to this worksheet is derived from records that were made at or near the time of the occurrence of the matters set forth by, or from information transmitted by, a person with knowledge of those matter, were kept in the course of the regularly conducted activity; and were made by the regularly conducted activity as a regular practice.

I further certify that copies of any transactional documents attached to this worksheet as required by paragraphs 1, 2, and 3, immediately above, are true and accurate copies of the original documents, I further certify that the original documents are in movant's possession, except as follows: _____.

I verify in accordance with 28 U.S.C. §1746 under the penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on____8/10/23_____[date]

_____Isiah Berry
[signature]

Bankruptcy Specialist
_____
[title]

Converted by TIFF Combine - (no stamps are applied in registered version)

# EXHIBIT A

LOAN NUMBER: ███████

# NOTE

01/06/06                    PROVIDENCE                         RI
[Date]                      [City]                             [State]

██████ Donelson St, Providence RI 02908
[Property Address]

## 1. BORROWER'S PROMISE TO PAY

In return for a loan that I have received, I promise to pay U.S. $ 163,000.00 (this amount is called "Principal"), plus interest, to the order of the Lender. The Lender is BANK OF AMERICA, N.A.

I will make all payments under this Note in the form of cash, check or money order.

I understand that the Lender may transfer this Note. The Lender or anyone who takes this Note by transfer and who is entitled to receive payments under this Note is called the "Note Holder."

## 2. INTEREST

Interest will be charged on unpaid principal until the full amount of Principal has been paid. I will pay interest at a yearly rate of 6.500 %.

The interest rate required by this Section 2 is the rate I will pay both before and after any default described in Section 6(B) of this Note.

## 3. PAYMENTS

### (A) Time and Place of Payments

I will pay principal and interest by making a payment every month.

I will make my monthly payment on the 1ST day of each month beginning on MARCH 01, 2006. I will make these payments every month until I have paid all of the principal and interest and any other charges described below that I may owe under this Note. Each monthly payment will be applied as of its scheduled due date and will be applied to interest before Principal. If, on FEBRUARY 01, 2036 I still owe amounts under this Note, I will pay those amounts in full on that date, which is called the "Maturity Date."

I will make my monthly payments at BANK OF AMERICA, P.O. BOX 9000, GETZVILLE, NY 14068-9000 or at a different place if required by the Note Holder.

### (B) Amount of Monthly Payments

My monthly payment will be in the amount of U.S. $ 1,030.28 .

## 4. BORROWER'S RIGHT TO PREPAY

I HAVE THE RIGHT TO MAKE PAYMENTS OF PRINCIPAL AT ANY TIME BEFORE THEY ARE DUE. A PAYMENT OF PRINCIPAL ONLY IS KNOWN AS A "PREPAYMENT." WHEN I MAKE A PREPAYMENT, I WILL TELL THE NOTE HOLDER IN WRITING THAT I AM DOING SO. I MAY NOT DESIGNATE A PAYMENT AS A PREPAYMENT IF I HAVE NOT MADE ALL THE MONTHLY PAYMENTS DUE UNDER THIS NOTE.

I MAY MAKE A FULL PREPAYMENT OR PARTIAL PREPAYMENT WITHOUT PAYING ANY PREPAYMENT CHARGE. AFTER PAYING ANY LATE FEES OR OUTSTANDING FEES THAT I OWE, THE NOTE HOLDER WILL USE MY PREPAYMENTS TO REDUCE THE AMOUNT OF PRINCIPAL THAT I OWE UNDER THIS NOTE. HOWEVER, THE NOTE HOLDER MAY APPLY MY PREPAYMENT TO THE ACCRUED AND UNPAID INTEREST ON THE PREPAYMENT AMOUNT BEFORE APPLYING MY PREPAYMENT TO REDUCE THE PRINCIPAL AMOUNT OF THIS NOTE. IF I MAKE A PARTIAL PREPAYMENT, THERE WILL BE NO CHANGES IN THE DUE DATES OR IN THE AMOUNT OF MY MONTHLY PAYMENT UNLESS THE NOTE HOLDER AGREES IN WRITING TO THOSE CHANGES.

MULTISTATE FIXED RATE NOTE – Single Family          Page 1 of 3
BS5N (0101)                                         VMP MORTGAGE FORMS - (800)521-7291

BS5R 01/04/06 1:19 PM ███████

(W/M).

Converted by TIFF Combine - (no stamps are applied in registered version)

**5. LOAN CHARGES**

If a law, which applies to this loan and which sets maximum loan charges, is finally interpreted so that the interest or other loan charges collected or to be collected in connection with this loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from me which exceeded permitted limits will be refunded to me. The Note Holder may choose to make this refund by reducing the Principal I owe under this Note or by making a direct payment to me. If a refund reduces Principal, the reduction will be treated as a partial Prepayment.

**6. BORROWER'S FAILURE TO PAY AS REQUIRED**

**(A) Late Charge for Overdue Payments**

If the Note Holder has not received the full amount of any monthly payment by the end of    15 calendar days after the date it is due, I will pay a late charge to the Note Holder. The amount of the charge will be   5.0          % of my overdue payment of principal and interest. I will pay this late charge promptly but only once on each late payment.

**(B) Default**

If I do not pay the full amount of each monthly payment on the date it is due, I will be in default.

**(C) Notice of Default**

If I am in default, the Note Holder may send me a written notice telling me that if I do not pay the overdue amount by a certain date, the Note Holder may require me to pay immediately the full amount of Principal which has not been paid and all the interest that I owe on that amount. That date must be at least 30 days after the date on which the notice is mailed to me or delivered by other means.

**(D) No Waiver By Note Holder**

Even if, at a time when I am in default, the Note Holder does not require me to pay immediately in full as described above, the Note Holder will still have the right to do so if I am in default at a later time.

**(E) Payment of Note Holder's Costs and Expenses**

If the Note Holder has required me to pay immediately in full as described above, the Note Holder will have the right to be paid back by me for all of its costs and expenses in enforcing this Note to the extent not prohibited by applicable law. Those expenses include, for example, reasonable attorneys' fees.

**7. GIVING OF NOTICES**

Unless applicable law requires a different method, any notice that must be given to me under this Note will be given by delivering it or by mailing it by first class mail to me at the Property Address above or at a different address if I give the Note Holder a notice of my different address.

Any notice that must be given to the Note Holder under this Note will be given by delivering it or by mailing it by first class mail to the Note Holder at the address stated in Section 3(A) above or at a different address if I am given a notice of that different address.

**8. OBLIGATIONS OF PERSONS UNDER THIS NOTE**

If more than one person signs this Note, each person is fully and personally obligated to keep all of the promises made in this Note, including the promise to pay the full amount owed. Any person who is a guarantor, surety or endorser of this Note is also obligated to do these things. Any person who takes over these obligations, including the obligations of a guarantor, surety or endorser of this Note, is also obligated to keep all of the promises made in this Note. The Note Holder may enforce its rights under this Note against each person individually or against all of us together. This means that any one of us may be required to pay all of the amounts owed under this Note.

**9. WAIVERS**

I and any other person who has obligations under this Note waive the rights of Presentment and Notice of Dishonor. "Presentment" means the right to require the Note Holder to demand payment of amounts due. "Notice of Dishonor" means the right to require the Note Holder to give notice to other persons that amounts due have not been paid.

**10. UNIFORM SECURED NOTE**

This Note is a uniform instrument with limited variations in some jurisdictions. In addition to the protections given to the Note Holder under this Note, a Mortgage, Deed of Trust or Security Deed (the "Security Instrument"), dated the same date as this Note, protects the Note Holder from possible losses which might result if I do not keep the promises which I make in this Note. That Security Instrument describes how and under what conditions I may be required to make immediate payment in full of all amounts I owe under this Note. Some of those conditions are described as follows:

BS5N (0101)                                                     Page 2 of 3

BS5R 01/04/06 1:19 PM

W.M

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

WITNESS THE HAND(S) AND SEAL(S) OF THE UNDERSIGNED.

_____ (Seal)
WANDA GRANT                                        -Borrower

_____ (Seal)
                                                   -Borrower

PAY TO THE ORDER OF _____ (Seal)
                                                   -Borrower

WITHOUT RECOURSE_____ (Seal)
BANK OF AMERICA, N.A.                              -Borrower
BY: _____
CHRISTINA M. SCHMITT
ASSISTANT VICE PRESIDENT _____ (Seal)
                                                   -Borrower

_____ (Seal)
                                                   -Borrower

_____ (Seal)
                                                   -Borrower

_____ (Seal)
                                                   -Borrower
                                          *(Sign Original Only)*

BS5N (0101)                    Page 3 of 3
        BS5R 01/04/06 1:19 PM

Return To:  LOAN # ███████  &ZSR   Doc No: 00122341
                                          Book: 7808  Page:   94
          JACKSONVILLE POST CLOSING
          BANK OF AMERICA
          9000 SOUTHSIDE BLVD.
          BLDG 700, FILE RECEIPT DEPT.
          JACKSONVILLE, FL  32256                    **EXHIBIT B**

Prepared By: CASSANDRA WHITAKER-COLEMAN
          BANK OF AMERICA, N.A.
          900 W. TRADE STREET
          GATEWAY VILLAGE, 3RD FLOOR
          CHARLOTTE, NC  282550001

—————————————— [Space Above This Line For Recording Data] ——————————————

# MORTGAGE                                LOAN # ████████

## DEFINITIONS

Words used in multiple sections of this document are defined below and other words are defined
in Sections 3, 11, 13, 18, 20 and 21. Certain rules regarding the usage of words used in this
document are also provided in Section 16.

**(A) "Security Instrument"** means this document, which is dated  JANUARY 06, 2006           ,
together with all Riders to this document.
**(B) "Borrower"** is  WANDA GRANT MADELINE A. GRANT

Borrower is the mortgagor under this Security Instrument.
**(C) "Lender"** is  BANK OF AMERICA, N.A.

Lender is a  NATIONAL BANKING ASSOCIATION
organized and existing under the laws of  THE UNITED STATES OF AMERICA

**RHODE ISLAND** – Single Family – **Fannie Mae/Freddie Mac UNIFORM INSTRUMENT**    **Form 3040  1/01**

〰️ −6(RI) (0208)              (rev. 11/02)
Page 1 of 16                                    CVRI 01/04/06 1:19 PM ████   ███████████████
VMP MORTGAGE FORMS           ███████████

Doc No: 00122341
Book: 7808   Page:   95

Lender's address is 900 W. TRADE STREET, GATEWAY VILLAGE, 3RD FLOOR,
CHARLOTTE, NC 282550001
Lender is the mortgagee under this Security Instrument.

**(D) "Note"** means the promissory note signed by Borrower and dated  JANUARY 06, 2006   .
The Note states that Borrower owes Lender ONE HUNDRED SIXTY THREE THOUSAND AND
00/100                                                                      Dollars
(U.S. $        163,000.00   ) plus interest. Borrower has promised to pay this debt in regular
Periodic Payments and to pay the debt in full not later than  FEBRUARY 01, 2036   .
**(E) "Property"** means the property that is described below under the heading "Transfer of Rights
in the Property."
**(F) "Loan"** means the debt evidenced by the Note, plus interest, any prepayment charges and late
charges due under the Note, and all sums due under this Security Instrument, plus interest.
**(G) "Riders"** means all Riders to this Security Instrument that are executed by Borrower. The
following Riders are to be executed by Borrower [check box as applicable]:

☐ Adjustable Rate Rider   ☐ Condominium Rider              ☐ Second Home Rider
☐ Balloon Rider           ☐ Planned Unit Development Rider  ☐ 1-4 Family Rider
☐ VA Rider                ☐ Biweekly Payment Rider          ☐ Other(s) [specify]

**(H) "Applicable Law"** means all controlling applicable federal, state and local statutes,
regulations, ordinances and administrative rules and orders (that have the effect of law) as well as
all applicable final, non-appealable judicial opinions.
**(I) "Community Association Dues, Fees, and Assessments"** means all dues, fees,
assessments and other charges that are imposed on Borrower or the Property by a condominium
association, homeowners association or similar organization.
**(J) "Electronic Funds Transfer"** means any transfer of funds, other than a transaction
originated by check, draft, or similar paper instrument, which is initiated through an electronic
terminal, telephonic instrument, computer, or magnetic tape so as to order, instruct, or authorize
a financial institution to debit or credit an account. Such term includes, but is not limited to,
point-of-sale transfers, automated teller machine transactions, transfers initiated by telephone, wire
transfers, and automated clearinghouse transfers.
**(K) "Escrow Items"** means those items that are described in Section 3.
**(L) "Miscellaneous Proceeds"** means any compensation, settlement, award of damages, or
proceeds paid by any third party (other than insurance proceeds paid under the coverages
described in Section 5) for: (i) damage to, or destruction of, the Property; (ii) condemnation or
other taking of all or any part of the Property; (iii) conveyance in lieu of condemnation; or (iv)
misrepresentations of, or omissions as to, the value and/or condition of the Property.
**(M) "Mortgage Insurance"** means insurance protecting Lender against the nonpayment of, or
default on, the Loan.
**(N) "Periodic Payment"** means the regularly scheduled amount due for (i) principal and
interest under the Note, plus (ii) any amounts under Section 3 of this Security Instrument.
**(O) "RESPA"** means the Real Estate Settlement Procedures Act (12 U.S.C. Section 2601 et seq.)
and its implementing regulation, Regulation X (24 C.F.R. Part 3500), as they might be amended
from time to time, or any additional or successor legislation or regulation that governs the same
subject matter. As used in this Security Instrument, "RESPA" refers to all requirements and
restrictions that are imposed in regard to a "federally related mortgage loan" even if the Loan
does not qualify as a "federally related mortgage loan" under RESPA.

Initials: _____

⚡ -6(RI) (0208)                        Page 2 of 16        Form 3040 1/01 (rev. 11/02)
    CVRI 01/04/06 1:19 PM ▮▮▮

M. G
W

Doc No: 00122341
Book: 7808   Page:   96

**(P) "Successor in Interest of Borrower"** means any party that has taken title to the Property, whether or not that party has assumed Borrower's obligations under the Note and/or this Security Instrument.

TRANSFER OF RIGHTS IN THE PROPERTY

This Security Instrument secures to Lender: (i) the repayment of the Loan, and all renewals, extensions and modifications of the Note; and (ii) the performance of Borrower's covenants and agreements under this Security Instrument and the Note. For this purpose, Borrower does hereby mortgage, grant and convey to Lender, with Mortgage Covenants upon the Statutory Condition and with the Statutory Power of Sale, the following described property located in the COUNTY                                of   PROVIDENCE                               :
        [Type of Recording Jurisdiction]                    [Name of Recording Jurisdiction]
"LEGAL DESCRIPTION ATTACHED HERETO AND MADE A PART HEREOF."

Parcel ID Number:  AP 70  Lot 558 & 560          which currently has the address of
107-111 Donelson St,                                                    [Street]
                    Providence    [City], Rhode Island 02908    [Zip Code]
("Property Address"):

    TOGETHER WITH all the improvements now or hereafter erected on the property, and all easements, appurtenances, and fixtures now or hereafter a part of the property. All replacements and additions shall also be covered by this Security Instrument. All of the foregoing is referred to in this Security Instrument as the "Property."
    BORROWER COVENANTS that Borrower is lawfully seised of the estate hereby conveyed and has the right to mortgage, grant and convey the Property and that the Property is unencumbered, except for encumbrances of record. Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.
    THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real property.
    UNIFORM COVENANTS. Borrower and Lender covenant and agree as follows:
    1. Payment of Principal, Interest, Escrow Items, Prepayment Charges, and Late Charges. Borrower shall pay when due the principal of, and interest on, the debt evidenced by the

Initials: _____

—6(RI) (0208)                        Page 3 of 19          Form 3040 1/01 (rev. 11/02)
    CVRI 01/04/06 1:19 P

M. G.
WM.

Doc No: 00122341
Book: 7808   Page:   97

Note and any prepayment charges and late charges due under the Note. Borrower shall also pay funds for Escrow Items pursuant to Section 3. Payments due under the Note and this Security Instrument shall be made in U.S. currency. However, if any check or other instrument received by Lender as payment under the Note or this Security Instrument is returned to Lender unpaid, Lender may require that any or all subsequent payments due under the Note and this Security Instrument be made in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality, or entity; or (d) Electronic Funds Transfer.

Payments are deemed received by Lender when received at the location designated in the Note or at such other location as may be designated by Lender in accordance with the notice provisions in Section 15. Lender may return any payment or partial payment if the payment or partial payments are insufficient to bring the Loan current. Lender may accept any payment or partial payments insufficient to bring the Loan current, without waiver of any rights hereunder or prejudice to its rights to refuse such payment or partial payments in the future, but Lender is not obligated to apply such payments at the time such payments are accepted. If each Periodic Payment is applied as of its scheduled due date, then Lender need not pay interest on unapplied funds. Lender may hold such unapplied funds until Borrower makes payment to bring the Loan current. If Borrower does not do so within a reasonable period of time, Lender shall either apply such funds or return them to Borrower. If not applied earlier, such funds will be applied to the outstanding principal balance under the Note immediately prior to foreclosure. No offset or claim which Borrower might have now or in the future against Lender shall relieve Borrower from making payments due under the Note and this Security Instrument or performing the covenants and agreements secured by this Security Instrument.

**2. Application of Payments or Proceeds.** Except as otherwise described in this Section 2, all payments accepted and applied by Lender shall be applied in the following order of priority: (a) interest due under the Note; (b) principal due under the Note; (c) amounts due under Section 3. Such payments shall be applied to each Periodic Payment in the order in which it became due. Any remaining amounts shall be applied first to late charges, second to any other amounts due under this Security Instrument, and then to reduce the principal balance of the Note.

If Lender receives a payment from Borrower for a delinquent Periodic Payment which includes a sufficient amount to pay any late charge due, the payment may be applied to the delinquent payment and the late charge. If more than one Periodic Payment is outstanding, Lender may apply any payment received from Borrower to the repayment of the Periodic Payments if, and to the extent that, each payment can be paid in full. To the extent that any excess exists after the payment is applied to the full payment of one or more Periodic Payments, such excess may be applied to any late charges due. Voluntary prepayments shall be applied first to any prepayment charges and then as described in the Note.

Any application of payments, insurance proceeds, or Miscellaneous Proceeds to principal due under the Note shall not extend or postpone the due date, or change the amount, of the Periodic Payments.

**3. Funds for Escrow Items.** Borrower shall pay to Lender on the day Periodic Payments are due under the Note, until the Note is paid in full, a sum (the "Funds") to provide for payment of amounts due for: (a) taxes and assessments and other items which can attain priority over this Security Instrument as a lien or encumbrance on the Property; (b) leasehold payments or ground rents on the Property, if any; (c) premiums for any and all insurance required by Lender under Section 5; and (d) Mortgage Insurance premiums, if any, or any sums payable by Borrower to Lender in lieu of the payment of Mortgage Insurance premiums in accordance with the provisions of Section 10. These items are called "Escrow Items." At origination or at any time during the term of the Loan, Lender may require that Community Association Dues, Fees, and Assessments, if any, be escrowed by Borrower, and such dues, fees and assessments shall be an Escrow Item.

Initials: _____

—6(RI) (0208)          Page 4 of 18          Form 3040 1/01 (rev. 11/02)
CVRI 01/04/06 1:19 PM

M. G.

WM

Doc No: 00122341
Book: 7808 Page: 98

Borrower shall promptly furnish to Lender all notices of amounts to be paid under this Section. Borrower shall pay Lender the Funds for Escrow Items unless Lender waives Borrower's obligation to pay the Funds for any or all Escrow Items. Lender may waive Borrower's obligation to pay to Lender Funds for any or all Escrow Items at any time. Any such waiver may only be in writing. In the event of such waiver, Borrower shall pay directly, when and where payable, the amounts due for any Escrow Items for which payment of Funds has been waived by Lender and, if Lender requires, shall furnish to Lender receipts evidencing such payment within such time period as Lender may require. Borrower's obligation to make such payments and to provide receipts shall for all purposes be deemed to be a covenant and agreement contained in this Security Instrument, as the phrase "covenant and agreement" is used in Section 9. If Borrower is obligated to pay Escrow Items directly, pursuant to a waiver, and Borrower fails to pay the amount due for an Escrow Item, Lender may exercise its rights under Section 9 and pay such amount and Borrower shall then be obligated under Section 9 to repay to Lender any such amount. Lender may revoke the waiver as to any or all Escrow Items at any time by a notice given in accordance with Section 15 and, upon such revocation, Borrower shall pay to Lender all Funds, and in such amounts, that are then required under this Section 3.

Lender may, at any time, collect and hold Funds in an amount (a) sufficient to permit Lender to apply the Funds at the time specified under RESPA, and (b) not to exceed the maximum amount a lender can require under RESPA. Lender shall estimate the amount of Funds due on the basis of current data and reasonable estimates of expenditures of future Escrow Items or otherwise in accordance with Applicable Law.

The Funds shall be held in an institution whose deposits are insured by a federal agency, instrumentality, or entity (including Lender, if Lender is an institution whose deposits are so insured) or in any Federal Home Loan Bank. Lender shall apply the Funds to pay the Escrow Items no later than the time specified under RESPA. Lender shall not charge Borrower for holding and applying the Funds, annually analyzing the escrow account, or verifying the Escrow Items, unless Lender pays Borrower interest on the Funds and Applicable Law permits Lender to make such a charge. Unless an agreement is made in writing or Applicable Law requires interest to be paid on the Funds, Lender shall not be required to pay Borrower any interest or earnings on the Funds. Borrower and Lender can agree in writing, however, that interest shall be paid on the Funds. Lender shall give to Borrower, without charge, an annual accounting of the Funds as required by RESPA.

If there is a surplus of Funds held in escrow, as defined under RESPA, Lender shall account to Borrower for the excess funds in accordance with RESPA. If there is a shortage of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the shortage in accordance with RESPA, but in no more than 12 monthly payments. If there is a deficiency of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the deficiency in accordance with RESPA, but in no more than 12 monthly payments.

Upon payment in full of all sums secured by this Security Instrument, Lender shall promptly refund to Borrower any Funds held by Lender.

**4. Charges; Liens.** Borrower shall pay all taxes, assessments, charges, fines, and impositions attributable to the Property which can attain priority over this Security Instrument, leasehold payments or ground rents on the Property, if any, and Community Association Dues, Fees, and Assessments, if any. To the extent that these items are Escrow Items, Borrower shall pay them in the manner provided in Section 3.

Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Borrower: (a) agrees in writing to the payment of the obligation secured by the lien in

Initials: _____

—6(RI) (0209)                          Page 5 of 16                    Form 3040 1/01 (rev. 11/02)
CVRI 01/04/06 1:19 PM

*m. G.*

*W N*

Doc No: 00122341
Book: 7808 Page:    99

a manner acceptable to Lender, but only so long as Borrower is performing such agreement; (b) contests the lien in good faith by, or defends against enforcement of the lien in, legal proceedings which in Lender's opinion operate to prevent the enforcement of the lien while those proceedings are pending, but only until such proceedings are concluded; or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to this Security Instrument. If Lender determines that any part of the Property is subject to a lien which can attain priority over this Security Instrument, Lender may give Borrower a notice identifying the lien. Within 10 days of the date on which that notice is given, Borrower shall satisfy the lien or take one or more of the actions set forth above in this Section 4.

Lender may require Borrower to pay a one-time charge for a real estate tax verification and/or reporting service used by Lender in connection with this Loan.

**5. Property Insurance.** Borrower shall keep the improvements now existing or hereafter erected on the Property insured against loss by fire, hazards included within the term "extended coverage," and any other hazards including, but not limited to, earthquakes and floods, for which Lender requires insurance. This insurance shall be maintained in the amounts (including deductible levels) and for the periods that Lender requires. What Lender requires pursuant to the preceding sentences can change during the term of the Loan. The insurance carrier providing the insurance shall be chosen by Borrower subject to Lender's right to disapprove Borrower's choice, which right shall not be exercised unreasonably. Lender may require Borrower to pay, in connection with this Loan, either: (a) a one-time charge for flood zone determination, certification and tracking services; or (b) a one-time charge for flood zone determination and certification services and subsequent charges each time remappings or similar changes occur which reasonably might affect such determination or certification. Borrower shall also be responsible for the payment of any fees imposed by the Federal Emergency Management Agency in connection with the review of any flood zone determination resulting from an objection by Borrower.

If Borrower fails to maintain any of the coverages described above, Lender may obtain insurance coverage, at Lender's option and Borrower's expense. Lender is under no obligation to purchase any particular type or amount of coverage. Therefore, such coverage shall cover Lender, but might or might not protect Borrower, Borrower's equity in the Property, or the contents of the Property, against any risk, hazard or liability and might provide greater or lesser coverage than was previously in effect. Borrower acknowledges that the cost of the insurance coverage so obtained might significantly exceed the cost of insurance that Borrower could have obtained. Any amounts disbursed by Lender under this Section 5 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

All insurance policies required by Lender and renewals of such policies shall be subject to Lender's right to disapprove such policies, shall include a standard mortgage clause, and shall name Lender as mortgagee and/or as an additional loss payee. Lender shall have the right to hold the policies and renewal certificates. If Lender requires, Borrower shall promptly give to Lender all receipts of paid premiums and renewal notices. If Borrower obtains any form of insurance coverage, not otherwise required by Lender, for damage to, or destruction of, the Property, such policy shall include a standard mortgage clause and shall name Lender as mortgagee and/or as an additional loss payee.

In the event of loss, Borrower shall give prompt notice to the insurance carrier and Lender. Lender may make proof of loss if not made promptly by Borrower. Unless Lender and Borrower otherwise agree in writing, any insurance proceeds, whether or not the underlying insurance was required by Lender, shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and

Initials: _____

VMP®–6(RI) (0209)                                  Page 6 of 15                                  Form 3040 1/01 (rev. 11/02)
CVR1 01/04/06 1:19 PM

M. G.

WM

Doc No: 00122341
Book: 7808 Page: 100

restoration period, Lender shall have the right to hold such insurance proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such insurance proceeds, Lender shall not be required to pay Borrower any interest or earnings on such proceeds. Fees for public adjusters, or other third parties, retained by Borrower shall not be paid out of the insurance proceeds and shall be the sole obligation of Borrower. If the restoration or repair is not economically feasible or Lender's security would be lessened, the insurance proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such insurance proceeds shall be applied in the order provided for in Section 2.

If Borrower abandons the Property, Lender may file, negotiate and settle any available insurance claim and related matters. If Borrower does not respond within 30 days to a notice from Lender that the insurance carrier has offered to settle a claim, then Lender may negotiate and settle the claim. The 30-day period will begin when the notice is given. In either event, or if Lender acquires the Property under Section 22 or otherwise, Borrower hereby assigns to Lender (a) Borrower's rights to any insurance proceeds in an amount not to exceed the amounts unpaid under the Note or this Security Instrument, and (b) any other of Borrower's rights (other than the right to any refund of unearned premiums paid by Borrower) under all insurance policies covering the Property, insofar as such rights are applicable to the coverage of the Property. Lender may use the insurance proceeds either to repair or restore the Property or to pay amounts unpaid under the Note or this Security Instrument, whether or not then due.

6. **Occupancy.** Borrower shall occupy, establish, and use the Property as Borrower's principal residence within 60 days after the execution of this Security Instrument and shall continue to occupy the Property as Borrower's principal residence for at least one year after the date of occupancy, unless Lender otherwise agrees in writing, which consent shall not be unreasonably withheld, or unless extenuating circumstances exist which are beyond Borrower's control.

7. **Preservation, Maintenance and Protection of the Property; Inspections.** Borrower shall not destroy, damage or impair the Property, allow the Property to deteriorate or commit waste on the Property. Whether or not Borrower is residing in the Property, Borrower shall maintain the Property in order to prevent the Property from deteriorating or decreasing in value due to its condition. Unless it is determined pursuant to Section 5 that repair or restoration is not economically feasible, Borrower shall promptly repair the Property if damaged to avoid further deterioration or damage. If insurance or condemnation proceeds are paid in connection with damage to, or the taking of, the Property, Borrower shall be responsible for repairing or restoring the Property only if Lender has released proceeds for such purposes. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. If the insurance or condemnation proceeds are not sufficient to repair or restore the Property, Borrower is not relieved of Borrower's obligation for the completion of such repair or restoration.

Lender or its agent may make reasonable entries upon and inspections of the Property. If it has reasonable cause, Lender may inspect the interior of the improvements on the Property. Lender shall give Borrower notice at the time of or prior to such an interior inspection specifying such reasonable cause.

8. **Borrower's Loan Application.** Borrower shall be in default if, during the Loan application process, Borrower or any persons or entities acting at the direction of Borrower or

M. G.

W.S

Doc No: 00122341
Book: 7808  Page: 101

with Borrower's knowledge or consent gave materially false, misleading, or inaccurate information or statements to Lender (or failed to provide Lender with material information) in connection with the Loan. Material representations include, but are not limited to, representations concerning Borrower's occupancy of the Property as Borrower's principal residence.

**9. Protection of Lender's Interest in the Property and Rights Under this Security Instrument.** If (a) Borrower fails to perform the covenants and agreements contained in this Security Instrument, (b) there is a legal proceeding that might significantly affect Lender's interest in the Property and/or rights under this Security Instrument (such as a proceeding in bankruptcy, probate, for condemnation or forfeiture, for enforcement of a lien which may attain priority over this Security Instrument or to enforce laws or regulations), or (c) Borrower has abandoned the Property, then Lender may do and pay for whatever is reasonable or appropriate to protect Lender's interest in the Property and rights under this Security Instrument, including protecting and/or assessing the value of the Property, and securing and/or repairing the Property. Lender's actions can include, but are not limited to: (a) paying any sums secured by a lien which has priority over this Security Instrument; (b) appearing in court; and (c) paying reasonable attorneys' fees to protect its interest in the Property and/or rights under this Security Instrument, including its secured position in a bankruptcy proceeding. Securing the Property includes, but is not limited to, entering the Property to make repairs, change locks, replace or board up doors and windows, drain water from pipes, eliminate building or other code violations or dangerous conditions, and have utilities turned on or off. Although Lender may take action under this Section 9, Lender does not have to do so and is not under any duty or obligation to do so. It is agreed that Lender incurs no liability for not taking any or all actions authorized under this Section 9.

Any amounts disbursed by Lender under this Section 9 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

If this Security Instrument is on a leasehold, Borrower shall comply with all the provisions of the lease. If Borrower acquires fee title to the Property, the leasehold and the fee title shall not merge unless Lender agrees to the merger in writing.

**10. Mortgage Insurance.** If Lender required Mortgage Insurance as a condition of making the Loan, Borrower shall pay the premiums required to maintain the Mortgage Insurance in effect. If, for any reason, the Mortgage Insurance coverage required by Lender ceases to be available from the mortgage insurer that previously provided such insurance and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to obtain coverage substantially equivalent to the Mortgage Insurance previously in effect, at a cost substantially equivalent to the cost to Borrower of the Mortgage Insurance previously in effect, from an alternate mortgage insurer selected by Lender. If substantially equivalent Mortgage Insurance coverage is not available, Borrower shall continue to pay to Lender the amount of the separately designated payments that were due when the insurance coverage ceased to be in effect. Lender will accept, use and retain these payments as a non-refundable loss reserve in lieu of Mortgage Insurance. Such loss reserve shall be non-refundable, notwithstanding the fact that the Loan is ultimately paid in full, and Lender shall not be required to pay Borrower any interest or earnings on such loss reserve. Lender can no longer require loss reserve payments if Mortgage Insurance coverage (in the amount and for the period that Lender requires) provided by an insurer selected by Lender again becomes available, is obtained, and Lender requires separately designated payments toward the premiums for Mortgage Insurance. If Lender required Mortgage Insurance as a condition of making the Loan and Borrower was required to make separately designated payments toward the premiums for

Doc No: 00122341
Book: 7808 Page: 102

Mortgage Insurance, Borrower shall pay the premiums required to maintain Mortgage Insurance in effect, or to provide a non-refundable loss reserve, until Lender's requirement for Mortgage Insurance ends in accordance with any written agreement between Borrower and Lender providing for such termination or until termination is required by Applicable Law. Nothing in this Section 10 affects Borrower's obligation to pay interest at the rate provided in the Note.

Mortgage Insurance reimburses Lender (or any entity that purchases the Note) for certain losses it may incur if Borrower does not repay the Loan as agreed. Borrower is not a party to the Mortgage Insurance.

Mortgage insurers evaluate their total risk on all such insurance in force from time to time, and may enter into agreements with other parties that share or modify their risk, or reduce losses. These agreements are on terms and conditions that are satisfactory to the mortgage insurer and the other party (or parties) to these agreements. These agreements may require the mortgage insurer to make payments using any source of funds that the mortgage insurer may have available (which may include funds obtained from Mortgage Insurance premiums).

As a result of these agreements, Lender, any purchaser of the Note, another insurer, any reinsurer, any other entity, or any affiliate of any of the foregoing, may receive (directly or indirectly) amounts that derive from (or might be characterized as) a portion of Borrower's payments for Mortgage Insurance, in exchange for sharing or modifying the mortgage insurer's risk, or reducing losses. If such agreement provides that an affiliate of Lender takes a share of the insurer's risk in exchange for a share of the premiums paid to the insurer, the arrangement is often termed "captive reinsurance." Further:

(a) Any such agreements will not affect the amounts that Borrower has agreed to pay for Mortgage Insurance, or any other terms of the Loan. Such agreements will not increase the amount Borrower will owe for Mortgage Insurance, and they will not entitle Borrower to any refund.

(b) Any such agreements will not affect the rights Borrower has - if any - with respect to the Mortgage Insurance under the Homeowners Protection Act of 1998 or any other law. These rights may include the right to receive certain disclosures, to request and obtain cancellation of the Mortgage Insurance, to have the Mortgage Insurance terminated automatically, and/or to receive a refund of any Mortgage Insurance premiums that were unearned at the time of such cancellation or termination.

11. Assignment of Miscellaneous Proceeds; Forfeiture. All Miscellaneous Proceeds are hereby assigned to and shall be paid to Lender.

If the Property is damaged, such Miscellaneous Proceeds shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such Miscellaneous Proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may pay for the repairs and restoration in a single disbursement or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such Miscellaneous Proceeds, Lender shall not be required to pay Borrower any interest or earnings on such Miscellaneous Proceeds. If the restoration or repair is not economically feasible or Lender's security would be lessened, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such Miscellaneous Proceeds shall be applied in the order provided for in Section 2.

In the event of a total taking, destruction, or loss in value of the Property, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is equal to or greater than the amount of the sums secured by this Security Instrument immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the sums secured by this Security Instrument shall be reduced by the amount of the Miscellaneous Proceeds multiplied by the following fraction: (a) the total amount of the sums secured immediately before the partial taking, destruction, or loss in value divided by (b) the fair

Initials: _____

Doc No: 00122341
Book: 7808 Page: 103

market value of the Property immediately before the partial taking, destruction, or loss in value. Any balance shall be paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is less than the amount of the sums secured immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument whether or not the sums are then due.

If the Property is abandoned by Borrower, or if, after notice by Lender to Borrower that the Opposing Party (as defined in the next sentence) offers to make an award to settle a claim for damages, Borrower fails to respond to Lender within 30 days after the date the notice is given, Lender is authorized to collect and apply the Miscellaneous Proceeds either to restoration or repair of the Property or to the sums secured by this Security Instrument, whether or not then due. "Opposing Party" means the third party that owes Borrower Miscellaneous Proceeds or the party against whom Borrower has a right of action in regard to Miscellaneous Proceeds.

Borrower shall be in default if any action or proceeding, whether civil or criminal, is begun that, in Lender's judgment, could result in forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. Borrower can cure such a default and, if acceleration has occurred, reinstate as provided in Section 19, by causing the action or proceeding to be dismissed with a ruling that, in Lender's judgment, precludes forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. The proceeds of any award or claim for damages that are attributable to the impairment of Lender's interest in the Property are hereby assigned and shall be paid to Lender.

All Miscellaneous Proceeds that are not applied to restoration or repair of the Property shall be applied in the order provided for in Section 2.

**12. Borrower Not Released; Forbearance By Lender Not a Waiver.** Extension of the time for payment or modification of amortization of the sums secured by this Security Instrument granted by Lender to Borrower or any Successor in Interest of Borrower shall not operate to release the liability of Borrower or any Successors in Interest of Borrower. Lender shall not be required to commence proceedings against any Successor in Interest of Borrower or to refuse to extend time for payment or otherwise modify amortization of the sums secured by this Security Instrument by reason of any demand made by the original Borrower or any Successors in Interest of Borrower. Any forbearance by Lender in exercising any right or remedy including, without limitation, Lender's acceptance of payments from third persons, entities or Successors in Interest of Borrower or in amounts less than the amount then due, shall not be a waiver of or preclude the exercise of any right or remedy.

**13. Joint and Several Liability; Co-signers; Successors and Assigns Bound.** Borrower covenants and agrees that Borrower's obligations and liability shall be joint and several. However, any Borrower who co-signs this Security Instrument but does not execute the Note (a "co-signer"): (a) is co-signing this Security Instrument only to mortgage, grant and convey the co-signer's interest in the Property under the terms of this Security Instrument; (b) is not personally obligated to pay the sums secured by this Security Instrument; and (c) agrees that Lender and any other Borrower can agree to extend, modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Note without the co-signer's consent.

Subject to the provisions of Section 18, any Successor in Interest of Borrower who assumes Borrower's obligations under this Security Instrument in writing, and is approved by Lender, shall obtain all of Borrower's rights and benefits under this Security Instrument. Borrower shall not be released from Borrower's obligations and liability under this Security Instrument unless Lender agrees to such release in writing. The covenants and agreements of this Security Instrument shall bind (except as provided in Section 20) and benefit the successors and assigns of Lender.

**14. Loan Charges.** Lender may charge Borrower fees for services performed in connection with Borrower's default, for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument, including, but not limited to, attorneys' fees, property inspection and valuation fees. In regard to any other fees, the absence of express authority in this Security Instrument to charge a specific fee to Borrower shall not be construed as a prohibition on the

Initials: _____

VMP -6(RI) (0209)                    Page 10 of 16                    Form 3040 1/01 (rev. 11/02)
CVRI 01/04/06 1:19 PM

M. G.
W

Doc No: 00122341
Book: 7808    Page:    104

charging of such fee. Lender may not charge fees that are expressly prohibited by this Security Instrument or by Applicable Law.

If the Loan is subject to a law which sets maximum loan charges, and that law is finally interpreted so that the interest or other loan charges collected or to be collected in connection with the Loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from Borrower which exceeded permitted limits will be refunded to Borrower. Lender may choose to make this refund by reducing the principal owed under the Note or by making a direct payment to Borrower. If a refund reduces principal, the reduction will be treated as a partial prepayment without any prepayment charge (whether or not a prepayment charge is provided for under the Note). Borrower's acceptance of any such refund made by direct payment to Borrower will constitute a waiver of any right of action Borrower might have arising out of such overcharge.

**15. Notices.** All notices given by Borrower or Lender in connection with this Security Instrument must be in writing. Any notice to Borrower in connection with this Security Instrument shall be deemed to have been given to Borrower when mailed by first class mail or when actually delivered to Borrower's notice address if sent by other means. Notice to any one Borrower shall constitute notice to all Borrowers unless Applicable Law expressly requires otherwise. The notice address shall be the Property Address unless Borrower has designated a substitute notice address by notice to Lender. Borrower shall promptly notify Lender of Borrower's change of address. If Lender specifies a procedure for reporting Borrower's change of address, then Borrower shall only report a change of address through that specified procedure. There may be only one designated notice address under this Security Instrument at any one time. Any notice to Lender shall be given by delivering it or by mailing it by first class mail to Lender's address stated herein unless Lender has designated another address by notice to Borrower. Any notice in connection with this Security Instrument shall not be deemed to have been given to Lender until actually received by Lender. If any notice required by this Security Instrument is also required under Applicable Law, the Applicable Law requirement will satisfy the corresponding requirement under this Security Instrument.

**16. Governing Law; Severability; Rules of Construction.** This Security Instrument shall be governed by federal law and the law of the jurisdiction in which the Property is located. All rights and obligations contained in this Security Instrument are subject to any requirements and limitations of Applicable Law. Applicable Law might explicitly or implicitly allow the parties to agree by contract or it might be silent, but such silence shall not be construed as a prohibition against agreement by contract. In the event that any provision or clause of this Security Instrument or the Note conflicts with Applicable Law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision.

As used in this Security Instrument: (a) words of the masculine gender shall mean and include corresponding neuter words or words of the feminine gender; (b) words in the singular shall mean and include the plural and vice versa; and (c) the word "may" gives sole discretion without any obligation to take any action.

**17. Borrower's Copy.** Borrower shall be given one copy of the Note and of this Security Instrument.

**18. Transfer of the Property or a Beneficial Interest in Borrower.** As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If

Initials: _____

—6(RI) (0208)                                    Form 3040 1/01 (rev. 11/02)
CVRI 01/04/06 1:19 PM          [redacted]        Page 11 of 16

M. G.

WM

Doc No: 00122341
Book: 7808  Page: 105

*Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.*

**19. Borrower's Right to Reinstate After Acceleration.** If Borrower meets certain conditions, Borrower shall have the right to have enforcement of this Security Instrument discontinued at any time prior to the earliest of: (a) five days before sale of the Property pursuant to any power of sale contained in this Security Instrument; (b) such other period as Applicable Law might specify for the termination of Borrower's right to reinstate; or (c) entry of a judgment enforcing this Security Instrument. Those conditions are that Borrower: (a) pays Lender all sums which then would be due under this Security Instrument and the Note as if no acceleration had occurred; (b) cures any default of any other covenants or agreements; (c) pays all expenses incurred in enforcing this Security Instrument, including, but not limited to, reasonable attorneys' fees, property inspection and valuation fees, and other fees incurred for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument; and (d) takes such action as Lender may reasonably require to assure that Lender's interest in the Property and rights under this Security Instrument, and Borrower's obligation to pay the sums secured by this Security Instrument, shall continue unchanged. Lender may require that Borrower pay such reinstatement sums and expenses in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality or entity; or (d) Electronic Funds Transfer. Upon reinstatement by Borrower, this Security Instrument and obligations secured hereby shall remain fully effective as if no acceleration had occurred. However, this right to reinstate shall not apply in the case of acceleration under Section 18.

**20. Sale of Note; Change of Loan Servicer; Notice of Grievance.** The Note or a partial interest in the Note (together with this Security Instrument) can be sold one or more times without prior notice to Borrower. A sale might result in a change in the entity (known as the "Loan Servicer") that collects Periodic Payments due under the Note and this Security Instrument and performs other mortgage loan servicing obligations under the Note, this Security Instrument, and Applicable Law. There also might be one or more changes of the Loan Servicer unrelated to a sale of the Note. If there is a change of the Loan Servicer, Borrower will be given written notice of the change which will state the name and address of the new Loan Servicer, the address to which payments should be made and any other information RESPA requires in connection with a notice of transfer of servicing. If the Note is sold and thereafter the Loan is serviced by a Loan Servicer other than the purchaser of the Note, the mortgage loan servicing obligations to Borrower will remain with the Loan Servicer or be transferred to a successor Loan Servicer and are not assumed by the Note purchaser unless otherwise provided by the Note purchaser.

Neither Borrower nor Lender may commence, join, or be joined to any judicial action (as either an individual litigant or the member of a class) that arises from the other party's actions pursuant to this Security Instrument or that alleges that the other party has breached any provision of, or any duty owed by reason of, this Security Instrument, until such Borrower or Lender has notified the other party (with such notice given in compliance with the requirements of Section 15) of such alleged breach and afforded the other party hereto a reasonable period after the giving of such notice to take corrective action. If Applicable Law provides a time period which must elapse before certain action can be taken, that time period will be deemed to be reasonable for purposes of this paragraph. The notice of acceleration and opportunity to cure given to Borrower pursuant to Section 22 and the notice of acceleration given to Borrower

Doc No: 00122341
Book: 7808 Page: 106

pursuant to Section 18 shall be deemed to satisfy the notice and opportunity to take corrective action provisions of this Section 20.

**21. Hazardous Substances.** As used in this Section 21: (a) "Hazardous Substances" are those substances defined as toxic or hazardous substances, pollutants, or wastes by Environmental Law and the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials; (b) *"Environmental Law" means federal laws and laws* of the jurisdiction where the Property is located that relate to health, safety or environmental protection; (c) "Environmental Cleanup" includes any response action, remedial action, or removal action, as defined in Environmental Law; and (d) an "Environmental Condition" means a condition that can cause, contribute to, or otherwise trigger an Environmental Cleanup.

Borrower shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances, or threaten to release any Hazardous Substances, on or in the Property. Borrower shall not do, nor allow anyone else to do, anything affecting the Property (a) that is in violation of any Environmental Law, (b) which creates an Environmental Condition, or (c) which, due to the presence, use, or release of a Hazardous Substance, creates a condition that adversely affects the value of the Property. The preceding two sentences shall not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property (including, but not limited to, hazardous substances in consumer products).

Borrower shall promptly give Lender written notice of (a) any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which Borrower has actual knowledge, (b) any Environmental Condition, including but not limited to, any spilling, leaking, discharge, release or threat of release of any Hazardous Substance, and (c) any condition caused by the presence, use or release of a Hazardous Substance which adversely affects the value of the Property. If Borrower learns, or is notified by any governmental or regulatory authority, or any private party, that any removal or other remediation of any Hazardous Substance affecting the Property is necessary, Borrower shall promptly take all necessary remedial actions in accordance with Environmental Law. Nothing herein shall create any obligation on Lender for an Environmental Cleanup.

NON-UNIFORM COVENANTS. Borrower and Lender further covenant and agree as follows:

**22. Acceleration; Remedies.** *Lender shall give notice to Borrower prior to acceleration following Borrower's breach of any covenant or agreement in this Security Instrument (but not prior to acceleration under Section 18 unless Applicable Law provides otherwise). The notice shall specify: (a) the default; (b) the action required to cure the default; (c) a date, not less than 30 days from the date the notice is given to Borrower, by which the default must be cured; and (d) that failure to cure the default on or before the date specified in the notice may result in acceleration of the sums secured by this Security Instrument and sale of the Property. The notice shall further inform Borrower of the right to reinstate after acceleration and the right to bring a court action to assert the non-existence of a default or any other defense of Borrower to acceleration and sale. If the default is not cured on or before the date specified in the notice, Lender*

*m. G.*

*w*

Doc No: 00122341
Book: 7808  Page:  107

at its option may require immediate payment in full of all sums secured by this Security Instrument without further demand and may invoke the STATUTORY POWER OF SALE and any other remedies permitted by Applicable Law. Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this Section 22, including, but not limited to, reasonable attorneys' fees and costs of title evidence.

If Lender invokes the STATUTORY POWER OF SALE, Lender shall mail a copy of a notice of sale to Borrower as provided in Section 15. Lender shall publish the notice of sale, and the Property shall be sold in the manner prescribed by Applicable Law. Lender or its designee may purchase the Property at any sale. The proceeds of the sale shall be applied in the following order: (a) to all expenses of the sale, including, but not limited to, reasonable attorneys' fees; (b) to all sums secured by this Security Instrument; and (c) any excess to the person or persons legally entitled to it.

23. **Release.** Upon payment of all sums secured by this Security Instrument, this Security Instrument shall become null and void. Lender shall discharge this Security Instrument. Borrower shall apply any recordation costs. Lender may charge Borrower a fee for releasing this Security Instrument, but only if the fee is paid to a third party for services rendered and the charging of the fee is permitted under Applicable Law.

24. **No Outstanding Automatic Orders in Domestic Relations Cases.** Borrower hereby represents and warrants to Lender that either (a) there is no outstanding automatic order under Chapter 15-5 of the Rhode Island General Laws against any Borrower relating to a complaint for dissolution of marriage, legal separation, annulment, custody or visitation or (b) there is an outstanding automatic order under Chapter 15-5 of the Rhode Island General Laws against a Borrower relating to a complaint for dissolution of marriage, legal separation, annulment, custody or visitation, and the other party that is subject to such order has consented to, or the court which issued the automatic order has issued another order authorizing, such Borrower's execution of the Note and this Security Instrument.

25. **Homestead Estate.** If Borrower heretofore has acquired or hereafter acquires an estate of homestead in the Property, Borrower hereby agrees that such homestead estate is waived to the extent of this Security Instrument and the amount due under the Note and to the extent of all renewals, extensions and modifications of this Security Instrument or the Note, and that said homestead estate is subject to all of the rights of Lender under this Security Instrument and the Note and all renewals, extensions and modifications of this Security Instrument and the Note, and is subordinate to the lien evidenced by this Security Instrument, and all renewals, extensions and modifications of this Security Instrument. Furthermore, Borrower hereby waives the benefits of any homestead or similar laws or regulations that may otherwise be applicable from time to time.

M. G.

W M.

Doc No: 00122341
Book: 7808  Page:  108

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Security Instrument and in any Rider executed by Borrower and recorded with it.

Witnesses:

*Kristine Kealy Cake*
*as to both*

_____ (Seal)
*Wanda Grant*
WANDA GRANT                   -Borrower

_____ (Seal)
_____ 
                             -Borrower

_____ (Seal)
-Borrower

_____ (Seal)
_____ 
                             -Borrower

_____ (Seal)
-Borrower

_____ (Seal)
*Madeline A Grant*
MADELINE A. GRANT             -Borrower

_____ (Seal)
-Borrower

_____ (Seal)
_____ 
                             -Borrower

-6(RI) (0208)                Page 15 of 16              Form 3040 1/01 (rev. 11/02)
                         CVRI 01/04/06 1:19 PM

Doc No: 00122341
Book: 7808  Page:  109

**STATE OF RHODE ISLAND,**
County ss: Providence

On this 6th day of January 2006 KKR in Cranston
, in said County, before me personally appeared

Wanda Grant & Madeline A Grant

each and all to me known and known
to me to be the person(s) executing the foregoing instrument and acknowledged said execution to
be his/her/their free act and deed.

Kristine Keates Roche

Notary Public

Kristine Keates Roche, Esq.
Notary Public
State of Rhode Island
My Commission Expires
September 18, 2007

Initials: _____

VMP –6(RI) (0208)          Page 16 of 16          **Form 3040 1/01 (rev. 11/02)**
CVRI 01/04/06 1:19 PM

Doc No: 00122341
Book: 7808  Page:  110

EXHIBIT A
Legal Description

That certain tract or parcel of land, with all the buildings
and improvements thereon, situated on the southerly side of
Donelson Street in the City of Providence and State of Rhode
Island, bounded and described as follows:

Beginning at a point in the southerly line of Donelson
Street distant forty (40) feet easterly from the southeasterly
corner of Donelson Street and June Street, said point of
beginning being at the northeasterly corner of land now or lately
of the City of Providence; thence running easterly bounding
northerly on Donelson Street one hundred twenty (120) feet to
land now or lately of Luigi Venditti and wife; thence turning and
running southerly bounding easterly on said Venditti land seventy
eight and 30/100 (78.30) feet to land now or lately of Anthony
Longo and wife; thence turning at a right angle and running
westerly bounding southerly on said Longo land forty (40) feet;
thence turning at a right angle and running southerly bounding
easterly on said Longo land twenty one and 70/100 (21.70) feet to
land now or lately of Carlo Antonetta, Jr., et al; thence turning
and running westerly bounding southerly on said Antonetta land
eighty (80) feet to said City of Providence land; thence turning
and running northerly bounding westerly on said City of
Providence land one hundred (100) feet to Donelson Street at the
point and place of beginning.

RECEIVED:

Providence
Received for Record
Jan 11,2006  at  09:24:04A
Document Num:   00122341
Barbara Troncy
Recorder of Deeds

Converted by TIFF Combine + (no stamps are applied by registered version)

Doc No: 00076448
Book:10688 Page: 242

Recording Requested By:
**Bank of America**
Prepared By: **Gevorg Grigoryants**
████████████

# EXHIBIT C

When recorded mail to:
**CoreLogic**
**Mail Stop: ASGN**
**1 CoreLogic Drive**
**Westlake, TX 76262-9823**
████████████

**RECEIVED:**

Providence
Received for Record
Sep 09, 2013 at 03:03:45P
Document Num: 00076448
John A Murphy
Recorder of Deeds

Property Address:
**107-111 Donelson St**
**Providence, RI 02908-2653**
████████████

This space for Recorder's use

## ████████ASSIGNMENT OF MORTGAGE

For Value Received, the undersigned holder of a Mortgage (herein "Assignor") whose address is **1800 TAPO CANYON ROAD, SIMI VALLEY, CA 93063** does hereby grant, sell, assign, transfer and convey unto **GREEN TREE SERVICING LLC** whose address is **7360 S. KYRENE ROAD, TEMPE, AZ 85283** all beneficial interest under that certain Mortgage described below together with the note(s) and obligations therein described and the money due and to become due thereon with interest and all rights accrued or to accrue under said Mortgage.

| | |
|---|---|
| Original Lender: | **BANK OF AMERICA, N.A.** |
| Borrower(s): | **WANDA GRANT MADELINE A. GRANT** |
| Date of Mortgage: | **1/6/2006** |
| Original Loan Amount: | **$163,000.00** |

Recorded in **Providence Township, RI** on: **1/11/2006**, book **7808**, page **94** and instrument number **00122341**

IN WITNESS WHEREOF, the undersigned has caused this Assignment of Mortgage to be executed on
Dated: _____**AUG 2 6 2013**_____

**Bank of America, N.A.**

By: _____
**Alexa Aguilar**
**Assistant Vice President**

State of California
County of __**Los Angeles**__

On __**AUG 2 6 2013**__ before me, _____**R. C. Peete**_____, Notary Public, personally appeared
_____**Alexa Aguilar**_____, who proved to me on the basis of satisfactory evidence to be the person (s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

**I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is true and correct.**

WITNESS my hand and official seal.

R. C. PEETE
COMM. # ████████
Notary Public - California
Los Angeles County
My Comm. Expires Sep. 24, 2015

Notary Public: ____**R. C. Peete**____ (Seal)
My Commission Expires: __**Sept. 24, 2015**__

Converted by TIFF Combine - (no stamps are applied by registered version)

Recording requested by:
GREEN TREE SERVICING LLC

When recorded mail to:
GREEN TREE SERVICING LLC
7360 SOUTH KYRENE ROAD, T310
TEMPE, AZ 85283
Attn: JULIE DUARTE

Doc No: 00089058
Book:10818   Page:   300

## CORPORATION ASSIGNMENT OF MORTGAGE

For value received, the undersigned, GREEN TREE SERVICING LLC, 7360 SOUTH
KYRENE ROAD, T314 TEMPE, AZ 85283, hereby grants, assigns and transfers to:
FEDERAL NATIONAL MORTGAGE ASSOCIATION
14221 DALLAS PKWY, STE 1000, DALLAS, TX  75254

All its interest under that certain Mortgage dated  1/06/06, executed by:
WANDA GRANT and MADELINE A GRANT, Mortgagor as per MORTGAGE recorded as
Instrument No. 00122341 on 1/11/06 in Book 7808 Page 94 of official records
in the County Recorder's Office of PROVIDENCE County, RHODE ISLAND.
                                    CUMBERLAND TOWN TAX COLL(QUARTERLY)
Original Mortgage $163,000.00
107-111 Donelson St, Providence RI 02908
Together with the Note or Notes therein described or referred to, the money
due and to become due thereon with interest, and all rights accrued or to
accrue under said Mortgage.

Dated: FEB 1 8 2014   GREEN TREE SERVICING LLC

                      By
                                  Clarissa Real

State of ARIZONA
County of MARICOPA
On FEB 1 8 2014, before me,  Margaret L. McFall
personally appeared _____, Notary Public,
GREEN TREE SERVICING LLC, whose identity was proven to me on the basis of
                      Clarissa Real            Assistant Vice President   of
satisfactory evidence to be the person who he or she claims to be and whose
name is subscribed to the within instrument and acknowledged to me that
he/she executed the same in his/her authorized capacity, and that by his/her
signature on the instrument the person, or entity upon behalf of which the
person acted, executed the instrument.


In witness whereof, I have hereunto set my hand and affixed my notarial seal
the day and year last written.


Signature: _____
           , Notary Public
Margaret L. McFall
Prepared by: ANDY RZYAN
101 S. MARENGO AVE, 4TH FLOOR
PASADENA, CA 91101
Phone#: ████████████

Margaret L McFall
Notary Public
Maricopa County, Arizona
My Comm. Expires 12-10-17

RECEIVED:

Providence
Received for Record
Mar 14,2014 at  02:41P
Document Num:   00089058
John A Murphy
Recorder of Deeds



Converted by TIFF Combine - (no stamps are applied by registered version)

Doc No: 00211063
Book:12175 Page: 143

Prepared By and Return To:
Kathleen Collins
Collateral Department
Meridian Asset Services, LLC
3201 34th Street South, Suite 310
St. Petersburg, FL 33711

Space above for Recorder's use

rec 1st

## ASSIGNMENT OF MORTGAGE

***This Assignment is being recorded to be inserted immediately preceding the Assignment recorded on 09/09/2013 as Book/Page/Instrument# 10688/242/00076448 in the records of the Clerk of City of Providence County, RI ***

FOR GOOD AND VALUABLE CONSIDERATION, the sufficiency of which is hereby acknowledged, the undersigned, **FEDERAL NATIONAL MORTGAGE ASSOCIATION**, whose address is **13150 WORLDGATE DRIVE, HERNDON, VIRGINIA 20170**, (ASSIGNOR), does hereby grant, assign and transfer to **BANK OF AMERICA, N.A.**, whose address is **1800 TAPO CANYON RD., SIMI VALLEY, CA 93063**, (ASSIGNEE), its successors, transferees and assigns forever, all beneficial interest under that certain mortgage, together with the certain note(s) described therein with all interest, all liens, and any rights due or to become due thereon.

Date of Mortgage: *1/6/2006*
Original Loan Amount: **$163,000.00**
Executed by (Borrower(s)): **WANDA GRANT & MADELINE A. GRANT**
Original Lender: **BANK OF AMERICA, N.A.**
Filed of Record: In Mortgage Book/Liber/Volume 7808, Page 94,
Document/Instrument No: 00122341 in the Recording District of **CITY OF PROVIDENCE, RI**, Recorded on **1/11/2006.**

Property more commonly described as: **111 DONELSON ST, PROVIDENCE, RI 02908**

IN WITNESS WHEREOF, the undersigned by its duly elected officers and pursuant to proper authority of its board of directors has duly executed, sealed, acknowledged and delivered this assignment.

Date: *09-10-18*

**FEDERAL NATIONAL MORTGAGE ASSOCIATION, BY MERIDIAN ASSET SERVICES, LLC, ITS ATTORNEY-IN-FACT**

By: **KIMBERLY HORTON**
Title: **VICE PRESIDENT**

Witness Name: **GERGANA GEORGIEVA**



Doc No: 00211063
Book:12175 Page: 144

| A NOTARY PUBLIC OR OTHER OFFICER COMPLETING THIS CERTIFICATE VERIFIES ONLY THE IDENTITY OF THE INDIVIDUAL WHO SIGNED THE DOCUMENT TO WHICH THIS CERTIFICATE IS ATTACHED. AND NOT THE TRUTHFULNESS, ACCURACY, OR VALIDITY OF THAT DOCUMENT |
| --- |

State of **FLORIDA**
County of **PINELLAS**

On _09-10-18_, before me, **KIMBERLY JEAN LITCHFIELD**, a Notary Public, personally appeared **KIMBERLY HORTON, VICE PRESIDENT of/for MERIDIAN ASSET SERVICES, LLC, AS ATTORNEY-IN-FACT FOR FEDERAL NATIONAL MORTGAGE ASSOCIATION**, personally known to me, or who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument. I certify under PENALTY OF PERJURY under the laws of the State of **FLORIDA** that the foregoing paragraph is true and correct. I further certify KIMBERLY HORTON, signed, sealed, attested and delivered this document as a voluntary act in my presence.

Witness my hand and official seal.

KIMBERLY JEAN LITCHFIELD
Commission
Expires January 21, 2022
Bonded Thru Budget Notary Services

(Notary Name): **KIMBERLY JEAN LITCHFIELD**
My commission expires: **01/21/2022**

RECEIVED:

Providence
Received for Record
Oct 03,2018 at 11:25A
Document Num: 00211063
John A Murphy
Recorder of Deeds

DOC: 2020262955
Bk:   12812     Pg:   302

Prepared By and Return To:

Collateral Department
Meridian Asset Services, LLC
3201 34th Street South, Suite 310
St. Petersburg, FL 33711

████████████

Space above for Recorder's use

## ASSIGNMENT OF MORTGAGE

FOR GOOD AND VALUABLE CONSIDERATION, the sufficiency of which is hereby acknowledged, the undersigned, **BANK OF AMERICA, N.A.**, whose address is **1800 TAPO CANYON RD., SIMI VALLEY, CA 93063**, (ASSIGNOR), does hereby grant, assign and transfer to **WILMINGTON SAVINGS FUND SOCIETY, FSB, D/B/A CHRISTIANA TRUST, NOT INDIVIDUALLY BUT AS TRUSTEE FOR PRETIUM MORTGAGE ACQUISITION TRUST**, whose address is **C/O PRETIUM RESIDENTIAL CREDIT MANAGEMENT, 120 SOUTH SIXTH STREET #2100, MINNEAPOLIS, MN 55402**, (ASSIGNEE), its successors, transferees and assigns forever, all beneficial interest under that certain mortgage, together with the certain note(s) described therein with all interest, all liens, and any rights due or to become due thereon.

Date of Mortgage: **1/6/2006**
Original Loan Amount: **$163,000.00**
Executed by (Borrower(s)): **WANDA GRANT & MADELINE A. GRANT**
Original Lender: **BANK OF AMERICA, N.A.**
Filed of Record:  In Mortgage Book/Liber/Volume 7808, Page 94
Document/Instrument No: 00122341 in the Recording District of **City of Providence, RI**, Recorded on 1/11/2006.

Property more commonly described as: **111 DONELSON ST, PROVIDENCE, RI 02908**

IN WITNESS WHEREOF, the undersigned by its duly elected officers and pursuant to proper authority of its board of directors has duly executed, sealed, acknowledged and delivered this assignment.

Date: **8/14/2020**

**BANK OF AMERICA, N.A., BY MERIDIAN ASSET SERVICES, LLC, ITS ATTORNEY-IN-FACT**

By: **MURAT DENIZ**
Title: **VICE PRESIDENT**

Witness Name: **TIFFANY ALMEYDA**

████████████

DOC: 2020262955
BK 12812   PG 303

---

A NOTARY PUBLIC OR OTHER OFFICER COMPLETING THIS CERTIFICATE VERIFIES ONLY THE IDENTITY OF THE INDIVIDUAL WHO SIGNED THE DOCUMENT TO WHICH THIS CERTIFICATE IS ATTACHED, AND NOT THE TRUTHFULNESS, ACCURACY, OR VALIDITY OF THAT DOCUMENT

---

State of      **FLORIDA**

County of     **PINELLAS**

On **8/14/2020**, before me, **JULIE ARENCIBIA**, a Notary Public, personally appeared **MURAT DENIZ, VICE PRESIDENT** of/for **MERIDIAN ASSET SERVICES, LLC, AS ATTORNEY-IN-FACT FOR BANK OF AMERICA, N.A.**, personally known to me, or who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument. I certify under PENALTY OF PERJURY under the laws of the State of **FLORIDA** that the foregoing paragraph is true and correct. I further certify the foregoing instrument was acknowledged before me by means of ☑ physical presence or ☐ online notarization and that MURAT DENIZ, signed, sealed, attested and delivered this document as a voluntary act in my presence.

Witness my hand and official seal.

_____

(Notary Name): **JULIE ARENCIBIA**
My commission expires: **07/18/2022**

JULIE ARENCIBIA
Commission
Expires July 18, 2022
Bonded Thru Budget Notary Services

RECEIVED:
Providence
Received for Record
08/24/2020 09:05:40 AM
Document Num: 2020262955
John A Murphy
Recorder of Deeds

**After Recording Return To:**
**Rushmore Loan Management Services LLC**
**1755 Wittington Place Ste. 400**
**Farmers Branch, TX 75234**

# EXHIBIT D

**This Document Prepared By:**
**KELVIN TORRES**
**Rushmore Loan Management Services LLC**
**15480 Laguna Canyon Road**
**Irvine, California 92618**

_____ [Space Above This Line For Recording Data] ████████████
Original Loan Amount: **$163,000.00**

## LOAN MODIFICATION AGREEMENT

This Loan Modification Agreement ("Agreement"), made this **30th** day of **January, 2019**, between **WANDA GRANT AND MADELINE A. GRANT** ("Borrower") and **Owner, by and through Rushmore Loan Management Services LLC, as current servicer and agent, whose address is 1755 Wittington Place Ste. 400, Farmers Branch, TX 75234** ("Lender"), amends and supplements (1) the Mortgage, Deed of Trust, or Security Deed (the "Security Instrument") dated **January 06, 2006** and recorded in Book/Liber **7808**, Page **94**, Instrument No: **00122341**, of the Official Records of **PROVIDENCE County, RI** and (2) the Note, bearing the same date as, and secured by, the Security Instrument, which covers the real and personal property described in the Security Instrument and defined therein as the "Property", located at

**111 DONELSON ST, PROVIDENCE, RI 02908,**
(Property Address)
the real property described being set forth as follows:

**AS SET FORTH IN THE MORTGAGE**

In consideration of the mutual promises and agreements exchanged, the parties hereto agree as follows (notwithstanding anything to the contrary contained in the Note or Security Instrument):

1. As of **January 30, 2019**, the amount payable under the Note and the Security Instrument (the "New Principal Balance") is U.S. **$284,262.11**, consisting of the unpaid amount(s) loaned to Borrower by Lender plus any interest and other amounts capitalized.

2. **$87,411.54** of the New Principal Balance shall be deferred (the "Deferred Principal Balance") and Borrower will not pay interest or make monthly payments on this amount. The New Principal Balance less the Deferred Principal Balance shall be referred to as the "Interest Bearing Principal Balance" and this amount is **$196,850.57**. Interest at the rate of **4.625%** will begin to accrue on the Interest Bearing Principal Balance as of **November 1, 2018** and the first new monthly

████████████

payment on the Interest Bearing Principal Balance will be due on **December 1, 2018**. The new Maturity Date will be **November 1, 2048**. Borrower's payment schedule for the modified Loan is as follows:

| Years | Interest Rate | Interest Rate Change Date | Monthly Prin & Int Payment Amount | Monthly Escrow Payment Amount | Total Monthly Payment | Payment Begins On | Number of Monthly Payments |
|---|---|---|---|---|---|---|---|
| 1-30 | 4.625% | November 01, 2018 | $900.85 | $423.70 May adjust periodically | $1,324.55 May adjust periodically | December 01, 2018 | 360 |

3. Borrower agrees to pay in full the Deferred Principal Balance and any other amounts still owed under the Note and Security Instrument by the earliest of: (i) the date Borrower sells or transfers an interest in the Property, (ii) the date Borrower pays the entire Interest Bearing Principal Balance, or (iii) the new Maturity Date.

4. If all or any part of the Property or any interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by the Security Instrument.

   If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is delivered or mailed within which Borrower must pay all sums secured by the Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by the Security Instrument without further notice or demand on Borrower.

5. Borrower also will comply with all other covenants, agreements, and requirements of the Security Instrument, including without limitation, Borrower's covenants and agreements to make all payments of taxes, insurance premiums, assessments, escrow items, impounds, and all other payments that Borrower is obligated to make under the Security Instrument; however, the following terms and provisions are forever canceled, null and void, as of the date specified in paragraph No. 1 above:

   (a) all terms and provisions of the Note and Security Instrument (if any) providing for, implementing, or relating to, any change or adjustment in the rate of interest payable under the Note; and

   (b) all terms and provisions of any adjustable rate rider, or other instrument or document that is affixed to, wholly or partially incorporated into, or is part of, the Note or Security Instrument and that contains any such terms and provisions as those referred to in (a) above.

6. Borrower understands and agrees that:

   (a) All the rights and remedies, stipulations, and conditions contained in the Security Instrument relating to default in the making of payments under the Security Instrument shall also apply to default in the making of the modified payments hereunder.

(b)     All covenants, agreements, stipulations, and conditions in the Note and Security Instrument shall be and remain in full force and effect, except as herein modified, and none of the Borrower's obligations or liabilities under the Note and Security Instrument shall be diminished or released by any provisions hereof, nor shall this Agreement in any way impair, diminish, or affect any of Lender's rights under or remedies on the Note and Security Instrument, whether such rights or remedies arise thereunder or by operation of law. Also, all rights of recourse to which Lender is presently entitled against any property or any other persons in any way obligated for, or liable on, the Note and Security Instrument are expressly reserved by Lender.

(c)     Nothing in this Agreement shall be understood or construed to be a satisfaction or release in whole or in part of the Note and Security Instrument.

(d)     All costs and expenses incurred by Lender in connection with this Agreement, including recording fees, title examination, and attorney's fees, shall be paid by the Borrower and shall be secured by the Security Instrument, unless stipulated otherwise by Lender.

(e)     Borrower agrees to make and execute such other documents or papers as may be necessary or required to effectuate the terms and conditions of this Agreement which, if approved and accepted by Lender, shall bind and inure to the heirs, executors, administrators, and assigns of the Borrower.

(f)     Borrower authorizes Lender, and Lender's successors and assigns, to share Borrower information including, but not limited to (i) name, address, and telephone number, (ii) Social Security Number, (iii) credit score, (iv) income, (v) payment history, (vi) account balances and activity, including information about any modification or foreclosure relief programs, with Third Parties that can assist Lender and Borrower in obtaining a foreclosure prevention alternative, or otherwise provide support services related to Borrower's loan. For purposes of this section, Third Parties include a counseling agency, state or local Housing Finance Agency or similar entity, any insurer, guarantor, or servicer that insures, guarantees, or services Borrower's loan or any other mortgage loan secured by the Property on which Borrower is obligated, or to any companies that perform support services to them in connection with Borrower's loan.

Borrower consents to being contacted by Lender or Third Parties concerning mortgage assistance relating to Borrower's loan including the trial period plan to modify Borrower's loan, at any telephone number, including mobile telephone number, or email address Borrower has provided to Lender or Third Parties.

By checking this box, Borrower also consents to being contacted by text messaging [ ].

7.  Notwithstanding anything to the contrary contained in this Agreement, if a discharge has been granted, Borrower and Lender acknowledge the effect of a discharge in bankruptcy that has been granted to Borrower prior to the execution of this Agreement and that Lender may not pursue Borrower for personal liability. However, Borrower acknowledges that Lender retains certain rights, including but not limited to the right to foreclose its lien evidenced by the Security Instrument under appropriate circumstances. The parties agree that the consideration for this Agreement is Lender's forbearance from presently exercising its rights and pursuing its remedies under the Security Instrument as a result of Borrower's default thereunder. Nothing in this

Agreement shall be construed to be an attempt to collect against Borrower personally or an attempt to revive personal liability.

8. This Agreement modifies an obligation secured by an existing security instrument recorded in PROVIDENCE County, RI, upon which all recordation taxes have been paid. As of the date of this agreement, the unpaid principal balance of the original obligation secured by the existing security instrument is $155,884.01. The principal balance secured by the existing security instrument as a result of this Agreement is $284,262.11, which amount represents the unpaid principal balance of this original obligation.

In Witness Whereof, the Lender and I have executed this Agreement.

_Wanda Grant_ _____ (Seal)
**WANDA GRANT**  -Borrower

_____ (Seal)
**MADELINE A. GRANT**  -Borrower

_____ [Space Below This Line For Acknowledgments] _____

STATE OF RHODE ISLAND, PROVIDENCE County

On this 2ND day of JULY, 20 19, before me, the undersigned Notary

Public, personally appeared WANDA GRANT RI DRIVER LICENSE # 8719101

personally known to the notary or proved to the notary through satisfactory evidence of identification, which was RI DRIVER LICENSE to be the person(s) whose name is signed on the preceding or attached document, and acknowledged to the notary that he/she signed it voluntarily for its stated purpose.

My commission expires : 05/01/2022

_Sarah Kellerman_ _____
Signature of Notary

SARAH KELLERMAN
Name of Notary

Origination Company: **Rushmore Loan Management Services LLC**

**Rushmore Loan Management Services LLC**

By: _____(Seal) - Lender
Name: _____**Tim Lightfoot**
Title: _____**JUL 12 2019**_____**Vice President**

_____
Date of Lender's Signature
_____ [Space Below This Line For Acknowledgments] _____

STATE OF _____, _____ County ss:

On this, the _____ day of _____, 20_____, before me, the undersigned officer,

in _____ (city) in said county, before me personally appeared

_____, the _____ of

_____
,
the person(s) executing the foregoing instrument and acknowledgment said execution to free act and deed.

_____
Signature of Notary

_____
Name of Notary

## ERRORS AND OMISSIONS/COMPLIANCE AGREEMENT

FHA/VA Case Number:

Borrower(s):    **WANDA GRANT and MADELINE A. GRANT**

Property Address:    **111 DONELSON ST, PROVIDENCE, RI 02908**

Servicer:    **Rushmore Loan Management Services LLC**

The undersigned Borrower(s) for and in consideration of the above-referenced Servicer modifying the terms of your mortgage loan, agrees that if requested by your Servicer, to fully cooperate and adjust for clerical errors, any or all loan modification documentation deemed necessary or desirable in the reasonable discretion of Servicer to enable Servicer to sell, convey, seek guaranty or market said loan to any entity, including but not limited to an investor, Federal National Mortgage Association, Federal Home Loan Mortgage Corporation, Government National Mortgage Association, Department of Housing and Urban Development, or the Department of Veterans Affairs, or any Municipal Bonding Authority.

I agree that if any document related to the Loan Documents and/or this Agreement is lost, misplaced, misstated, inaccurately reflects the true and correct terms and conditions of the loan as modified, or is otherwise missing, I will comply with the Lender's request to execute, acknowledge, initial, and deliver to the Lender any documentation the Lender deems necessary. If the original promissory note is replaced, the Lender hereby indemnifies me against any loss associated with a demand on the original note. All documents the Lender requests of me under this Section shall be referred to as "Documents." I agree to deliver the Documents within ten (10) days after I receive the Lender's written request for such replacement.

The undersigned Borrower(s) agree(s) to comply with all above noted requests by the above-referenced Servicer within 15 days from date of mailing of said requests. Borrower(s) agree(s) to assume all costs including, by way of illustration and not limitation, actual expenses, legal fees and marketing losses for failing to comply with correction requests in the above noted time period.

The undersigned Borrower(s) do hereby so agree and covenant in order to assure that this loan modification documentation executed this date will conform and be acceptable in the marketplace in the instance of transfer, sale or conveyance by Servicer of its interest in and to said loan modification documentation, and to assure marketable title in the said Borrower(s).

DATED this **30th** day of **January, 2019**.

_____ (Seal)
**WANDA GRANT** -Borrower

_____ (Seal)
**MADELINE A. GRANT** -Borrower

# BALLOON ADDENDUM TO LOAN MODIFICATION AGREEMENT
## (Due to Amortization)

### WANDA GRANT and MADELINE A. GRANT
### 111 DONELSON ST
### PROVIDENCE, RI 02908

THIS BALLOON ADDENDUM TO LOAN MODIFICATION AGREEMENT (the "Balloon Addendum") is made this **30th** day of **January, 2019**, and is incorporated into and shall be deemed to amend and supplement the Loan Modification Agreement (the "Modification Agreement" together, the "Agreements") entered into by the undersigned ("Borrower"), in favor of Owner, by and through **Rushmore Loan Management Services LLC**, as current servicer and agent ("Lender"). The Agreements amend and supplement (1) the Mortgage, Deed of Trust or Security Deed and any applicable Riders (the "Security Agreement"), and (2) the Note bearing the same date as, and secured by, the Security Agreement.

**ADDITIONAL COVENANTS**. In addition to the covenants and agreements made in the Modification Agreement, Borrower and Lender further covenant and agree as follows:

The monthly payment of Principal and Interest listed in the Loan Modification Agreement is the payment necessary to amortize **$196,850.57 over 480 months, with payments to be made over 360 months**. If you make the required principal and interest payments only you will have a balloon payment due at maturity. As of **November 1, 2048**, if you still owe amounts under this agreement you must repay these amounts in full on that date.

The Agreements only modify the Security Agreement and Note in regard to the provisions addressed. All other terms and conditions of the Security Agreement and Note remain in full force and effect.

This transaction may include debt forgiveness. In some cases, debt forgiveness may be taxed as income. Please consult a tax advisor regarding any tax implications you may have due to this transaction.

BY SIGNING BELOW, Lender and Borrower accept and agree to the terms and provisions contained in this Balloon Addendum.

_____ (Seal)
**WANDA GRANT** -Borrower

_____ (Seal)
**MADELINE A. GRANT** -Borrower

# BALLOON ADDENDUM TO LOAN MODIFICATION AGREEMENT

**WANDA GRANT AND MADELINE A. GRANT
111 DONELSON ST
PROVIDENCE, RI 02908**

THIS BALLOON ADDENDUM TO LOAN MODIFICATION AGREEMENT (the "Balloon Addendum") is made this **30**th day of **January, 2019**, and is incorporated into and shall be deemed to amend and supplement the Loan Modification Agreement (the "Modification Agreement" together, the "Agreements") entered into by the undersigned ("Borrower"), in favor of Owner, by and through **Rushmore Loan Management Services LLC**, as current servicer and agent for owner ("Lender"). The Agreements amend and supplement (1) the Mortgage, Deed of Trust or Security Deed and any applicable Riders (the "Security Agreement"), and (2) the Note bearing the same date as, and secured by, the Security Agreement.

**ADDITIONAL COVENANTS.** In addition to the covenants and agreements made in the Modification Agreement, Borrower and Lender further covenant and agree as follows:

1.  In an effort to assist the borrower in meeting their monthly obligations and upon execution of the Agreements, Lender agrees to immediately forgive an amount equal to **$0.00** (the "Forgiven Amount").

2.  In addition, Lender will agree to defer payment in the amount of **$87,411.54** (the "Balloon Amount"), which will be due and payable on the earliest of (a) the date the borrower sells or transfers an interest in the property, (b) the date the borrower pays the entire Interest Bearing Principal Balance, or (c) the maturity date of **November 1, 2048**. Lender will not charge interest on this Balloon Amount.

3.  The payment of Principal and Interest listed in Paragraph 2 of the Modification Agreement is the payment necessary to amortize **$196,850.57**, which is the portion of the Unpaid Principal Balance not affected by the adjustments described in Paragraphs 1 and 2 of this Balloon Addendum.

The Agreements only modify the Security Agreement and Note in regard to the provisions addressed. All other terms and conditions of the Security Agreement and Note remain in full force and effect.

This transaction may include debt forgiveness. In some cases, debt forgiveness may be taxed as income. Please consult a tax advisor regarding any tax implications you may have due to this transaction.

BY SIGNING BELOW, Lender and Borrower accept and agree to the terms and provisions contained in this Balloon Addendum.

_Wanda Grant_____(Seal)
**WANDA GRANT –Borrower**

_____(Seal)
**MADELINE A. GRANT –Borrower**


**Rushmore Loan Management Services LLC**

By:_____(Seal) - Lender
Name:
Title:                    **Tim Lightfoot**
_____JUL 1 2 2019_____  **Vice President**
Date of Lender's Signature